UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

EDWARD SIMMONS (#103371)                                            CIVIL ACTION

VERSUS

SECRETARY JAMES LeBLANC, ET AL.                            NO. 14-664-BAJ-RLB

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 16, 2016.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

EDWARD SIMMONS (#103371)                                      CIVIL ACTION

VERSUS

SECRETARY JAMES LeBLANC, ET AL.                               NO. 14-664-BAJ-RLB

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the parties' Cross Motions for Summary Judgment (R. Docs. 48 and 51).

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Secretary James LeBlanc, Warden N. Burl Cain, Assistant Warden Stephanie Lamartinere, Administrative Assistant Shawnee Guileyardo, EMT Christine Darbonne, and Lt. Broddle Roger complaining that his constitutional rights have been violated due to the defendants' deliberate indifference to his serious medical needs, retaliation for requesting emergency medical attention and for prior administrative grievances, and failure to afford him a disciplinary hearing after placing him in administrative segregation in connection with a wrongful disciplinary charge.

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's pertinent Requests for Administrative Remedy, a copy of Department Regulation No. B-05-005, and the affidavits of Warden Burl Cain, Sec. James LeBlanc, Asst. Warden Stephanie Lamartiniere, Shawnee Guileyard, Christine Darbonne, EMT, Lt. Broddle Roger, Major Steve Brengettsy, Msgt. Devora Collins, Dr. Randy Lavespere, and Dr. Hal MacMurdo.  The plaintiff moves for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, Disciplinary Reports dated April 28, 2014, excerpts

of the plaintiff's medical records, defendant Darbonne's Response to Plaintiff's First Set of Interrogatories, defendant Roger's Response to Plaintiff's First Set of Interrogatories, defendant Guileyardo's Response to Plaintiff's First Set of Interrogatories, the defendants' Response to Plaintiff's Request for Production of Documents and portions of an administrative remedy proceeding bearing case number "LSP-2014-1525."

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the

evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, as amended, the plaintiff alleges that on April 28, 2014 he sought medical treatment for chest pain and assistance with ensuring that he received the appropriate foods for his medical conditions, which include diabetes and high blood pressure. The plaintiff alleges that his sick call was rejected by EMT Carmouche and defendant EMT Christine Darbonne because "his diet was not a medical problem but was a security issue." The plaintiff alleges that he thereafter declared himself as a medical emergency because he was still experiencing chest pain, along with numbness in his right arm. EMT Carmouche and defendant EMT Darbonne allegedly refused to conduct any kind of examination of the plaintiff. Instead, defendant EMT Darbonne issued a disciplinary report charging the plaintiff with a Rule 15 violation for malingering. After being placed in administrative segregation, the plaintiff alleges that he was subsequently escorted to the prison's emergency room due to an elevated blood glucose level and high blood pressure.

The plaintiff further alleges that while in administrative segregation he began a hunger strike and refused to eat the restricted foods being served to him. Defendant Lt. Roger then allegedly issued a disciplinary report charging the plaintiff with a Rule 1 violation for possession of contraband. The report was allegedly issued in retaliation for refusing to eat the restricted foods and for prior ARPs filed by the plaintiff against defendant Lt. Rogers, which the plaintiff

refused to drop.  The plaintiff asserts that he was never brought before a disciplinary board for either false disciplinary charge, and that his grievance filed regarding the same was rejected.

In response to the plaintiff's allegations, the defendants contend, *inter alia*, that the plaintiff's claims are subject to dismissal for failure to exhaust administrative remedies.  In this regard, pursuant to 42 U.S.C. § 1997e, the plaintiff was required to exhaust administrative remedies available to him at the prison prior to commencing a civil action in this Court with respect to prison conditions.[1]  This provision is mandatory and applies broadly to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures before filing a suit relative to prison conditions.  *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).  Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" *Johnson v. Johnson*, *supra*, 385 F.3d at 516, *quoting Porter v. Nussle*, *supra*, 534 U.S. at 525.  Further, the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this intended purpose.  *Id.*

A review of the certified copy of the plaintiff's pertinent Requests for Administrative Remedy shows that the plaintiff submitted four ARPs following the complained of incidents allegedly occurring on April 28, 2014.  The plaintiff's first two ARPs ("2014-1345" and "2014-

---

[1] 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

1525") pertain to the events of April 28, 2014 complained of in the plaintiff's Complaint, as amended. The plaintiff's first ARP ("2014-1345") is dated the day of the alleged incidents, April 28, 2014. The plaintiff complained that during the month of April, 2014 he was not provided with foods that comply with his dietary restrictions in retaliation for refusing to drop a previously filed ARP. The plaintiff also complained therein regarding EMT Carmouche and defendant EMT Darbonne's refusal to take his sick call on April 28, 2014 as detailed above. The plaintiff requested relief for each day he was forced to stay on a hunger strike, and for EMT Carmouche and defendant EMT Darbonne to be suspended. *See* R. Doc. 48-14; pg. 7. This ARP was rejected on May 14, 2014 for containing multiple complaints. *See* R. Doc. 48-14, p. 6.

The plaintiff complained in his second ARP ("2014-1525"), dated May 7, 2014, of a violation of his due process rights by not being afforded a disciplinary hearing after being placed in administrative segregation on April 28, 2014. The plaintiff requested compensation in the amount of $100.00 per day for each day spent in administrative segregation and for defendant EMT Darbonne to be suspended for five days without pay. *See* R. Doc. 48-14, p. 13. The plaintiff's second ARP was rejected on September 29, 2014 because it pertained to disciplinary matters which must be appealed through the prison's disciplinary appeals process. *See* R. Doc. 48-14, p. 9.

In the Motion for Summary Judgment (R. Doc. 48), the defendants contend that these claims were properly rejected, but not exhausted for purposes of bringing suit in federal court. Defendants assert that any cause of action based on these claims should be dismissed for failure to exhaust administrative remedies.

Subsection I of the Louisiana Administrative Remedy Procedure provides in pertinent part, "The ARP screening officer shall furnish the offender with notice of the initial acceptance

or rejection of the request to advise that his request is being processed or has been rejected…If a request is rejected, it must be for one of the following reasons, which shall be noted on the request for administrative remedy or on the offender's written letter…(b). There are specialized administrative remedy procedures in place for this specific type of complaint, such as: (i). disciplinary matters;…(g). The offender has requested a remedy for more than one incident (a multiple complaint)…" *See* La. Admin. Code Tit. 22, PT. I, § 325(I).

The Louisiana Administrative Remedy Procedure further provides in pertinent part, "**Prior to filing a grievance in federal or state court**, unless specifically excepted by law, the offender must exhaust all administrative remedies. **Exhaustion occurs** (a) when the relief requested has been granted; (b) when the second step response has been issued; or **(c) when the grievance has been screened and rejected for one of the reasons specified in Subsection I, Grievance Screening**." *See* La. Admin. Code Tit. 22, PT. I, § 325(F)(3)(a)(viii)(c) (emphasis added). This provision was made effective October 20, 2013. Defendants have not pointed the Court to any decision specifically addressing the effect of this revision to the Code.

Based on a plain reading of the foregoing, pursuant to § 325(F)(3)(a)(viii)(c), the Code provides that exhaustion for purposes of filing suit in federal court occurs under multiple circumstances, specifically including when they were rejected for the reasons specified in § 325(I). At least one Court has applied these provisions to find that a plaintiff's claims were exhausted upon rejection in the screening process. In *Anderson v. Wilkinson*, 2014 WL 992078 (W.D. La. Mar. 13, 2014), the defendants filed a Motion for Summary Judgment asserting that the plaintiff failed to exhaust his administrative remedies as required by the PLRA. Anderson's grievance was rejected pursuant to § 325(I)(a)(ii)(f) because the request was not written by the offender and a waiver was not approved. Relying upon § 325(I)(1)(a)(i) and (b), the Court

concluded that because Anderson's grievance was rejected at the first step, Anderson was not required to pursue the grievance to the second step. The Court further concluded that upon rejection of Anderson's grievance by the screening officer for a reason specified in § 325(I), the grievance was exhausted under § 325(F), and the Court denied the defendants' Motion for Summary Judgment.

Neither party briefed the effect of the definition of exhaustion in § 325, the applicability to the plaintiff's rejected ARPs, or how § 325 comports with the requirements of 42 U.S.C.A. § 1997e(a); therefore, the Court ordered the parties to submit supplemental briefs to the Court referencing and discussing all relevant authority which may potentially resolve the foregoing conflict as set forth above. *See* R. Doc. 56. The plaintiff asserts in his supplemental brief that the Court should apply the plain language of the Louisiana Administrative Remedy Procedure and find that his claims were exhausted as the Court did in *Anderson*. *See* R. Doc. 57. The defendants argue that other provisions of the Louisiana Administrative Remedy Procedure provide the correct definition of exhaustion that comports with the requirements of 42 U.S.C.A. § 1997e(a).

Simply put, the Code provides that "exhaustion occurs" under three circumstances. Given defendants' acknowledgment that one of those circumstances is present here, based on a plain reading of the aforementioned administrative provisions, the Court concludes that the defendants are not entitled to summary judgment on the grounds that the plaintiff failed to exhaust his administrative remedies.

Turning to the defendants' argument that the plaintiff's claims against the defendants in their official capacity should be dismissed, in this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state

or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).  In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Although the plaintiff asserts in his opposition that he is not asserting any claims against the defendants in their official capacities, his Complaint has not been amended to reflect the same. Accordingly, the plaintiff's claims asserted against defendants in their official capacity for monetary damages are subject to dismissal.  In contrast, the plaintiff's claims for monetary damages asserted against these defendants in their individual capacities remain viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id*. at 29.  The plaintiff's claim for prospective injunctive relief asserted against these defendants in their official capacities also remains viable because such a claim is not treated as a claim against the state. *Will v. Michigan Department of State Police*, *supra*, 491 U.S. at 71 n.10.  Of course, the plaintiff must be able to prove a deprivation of his constitutional civil right in order to obtain any entitlement to relief.

   As to the claims asserted against the defendants in their individual capacities, the defendants assert that they are entitled to qualified immunity.  Specifically, the defendants contend that the plaintiff's allegations and evidentiary showing fail to show the existence of a genuine issue of disputed fact relative to their participation in any violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established at the time that the violation occurred. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[2]

Applying the foregoing standard, the Court finds that the plaintiff has failed to make a showing sufficient to defeat the defendants' assertion of qualified immunity in this case. In the first place, the plaintiff's Complaint, Amended Complaint and Memorandum in Support of his Cross Motion for Summary Judgement are unsworn and are not properly before the Court for

---

[2] The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

consideration in connection with the defendants' Motion for Summary Judgment. A verified complaint may potentially be considered as competent summary judgment evidence to the extent the complaint comports with the affidavit requirements of Rule 56 of the Federal Rules of Civil Procedure. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). 28 U.S.C. § 1746 provides for verification of an unsworn complaint when a plaintiff declares under penalty of perjury that the factual allegations contained therein are true and correct.[3] When a complaint is so verified, the plaintiff faces the possibility of criminal prosecution for perjury if it is shown that he willfully or knowingly made material misrepresentations. *See* 28 U.S.C. §§ 1621, 1623. In turn, when a complaint is executed in the form prescribed by 28 U.S.C. § 1746, the factual allegations of the plaintiff's complaint are transformed from "mere allegations" to "specific facts" as if set forth in an affidavit. *See Searcy v. Cooper*, 2002 WL 535058, *3 (N.D. TX 2009). The plaintiff's pleadings do not contain the statements required by 28 U.S.C. § 1746 which would allow the Court to consider them as competent summary judgment evidence.

Furthermore, although deliberate indifference to serious medical needs is actionable under certain circumstances, the plaintiff's unsworn allegations fall short of establishing a constitutional violation. A prison official violates the Eighth Amendment's prohibition of cruel and unusual punishment if the official shows deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–06 (1976). The official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety" and "be aware of facts from which

---

[3] 28 U.S.C. § 1746 provides, "Wherever, … under any rule, … made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the … affidavit, in writing of the person making the same …, such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
(1) … "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date)."

the inference could be drawn that a substantial risk of serious harm exists". *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official also must draw that inference. *Id.*

Failed treatments, negligence, and medical malpractice are insufficient to give rise to a claim of deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir.2006). A prisoner who disagrees with the course of treatment or alleges that he should have received further treatment also does not raise a claim of deliberate indifference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Instead, an inmate must show that prison officials denied him treatment, purposefully provided him improper treatment, or ignored his medical complaints. *Id.* A delay in treatment may violate the Eighth Amendment if the delay was the result of the prison official's deliberate indifference and substantial harm—including suffering—occurred during the delay. *Easter v. Powell*, 467 F.3d 459, 464–65 (5th Cir. 2006).

In the instant matter, the defendants have submitted evidence which reflects that they have no personal involvement in the plaintiff's prescribed diet or meal preparation (*see* Affidavits of defendants Cain, LeBlanc, Lamartiniere, Guileyardo, Darbonne, and Roger – R. Docs. 48-3 through 48-8), but that the plaintiff's meals are prepared in accordance with his prescribed diet which is appropriate for his medical conditions. In her affidavit, Master Sgt. Collins states that she works as security over food preparation, and ensures that the diet plan for each inmate is followed. Master Sgt. Collins further states that all guidelines are followed in preparing the plaintiff's meals, and at no time has she violated any such guidelines in the preparation of the plaintiff's meals. *See* R. Doc. 48-10. Nevertheless, Drs. Lavespere and Macmurdo state in their affidavits that although the plaintiff has been prescribed a diabetic diet, small deviations from a strict diabetic diet will have a negligible impact on the plaintiff's long term diabetic management. *See* R. Docs. 48-11 and 48-12.

Additionally, the plaintiff's unsworn allegations that defendants Darbonne and Roger denied him medical care on April 28, 2014 are also insufficient to establish a claim for deliberate indifference to his serious medical needs.  The plaintiff alleges in his Complaint, as amended, that approximately eight hours after he was his sickcall was rejected, he was escorted to the treatment center for care.  As such, the plaintiff's unsworn allegations amount to no more than a mere delay in medical care from which the plaintiff has not alleged to have suffered any substantial harm.  Accordingly, based upon the record before the Court, the defendants are entitled to summary judgment on the plaintiff's claim of deliberate indifference to his serious medical needs.

While not specifically briefed by the defendants, the Court now turns to the plaintiff's due process and retaliation claims.  To the extent the plaintiff is complaining of a violation of his due process rights in connection with the disciplinary charges for malingering and contraband, an inmate does not have a constitutional right to have his prison disciplinary or administrative proceedings properly investigated, handled, or favorably resolved.  *Mahogany v. Miller,* 252 F.App'x. 593, 595 (5th Cir. 2007), and there is no procedural Due Process right inherent in such a claim.  As stated by the United States Court of Appeal for the Fifth Circuit in *Geiger v. Jowers,* 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of an administrative grievance):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous…[The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction.  As he relies on legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless. *Id.* at 373-74.

This conclusion is equally applicable in the context of prison disciplinary proceedings. *See, e.g., Sanchez v. Grounds,* 2014 WL 1049164, *2 (E.D. Tex. Mar. 14, 2014) (finding that an

inmate's claim regarding a failure to conduct a "proper investigation" of a disciplinary charge "did not amount to a constitutional deprivation");  and *Jackson v. Mizell,* 2009 WL 1792774, *7 n.11 (E.D. La. June 23, 2009) (noting that "the Court fails to see how a prisoner could ever state a cognizable claim alleging an inadequate disciplinary investigation").

Further, the failure of prison officials to follow prison rules or regulations does not amount to a violation of the plaintiff's constitutional rights.  *Jackson v. Cain*, 864 F.3d 1235, 1252 (5th Cir. 1989).  Nor does this Court sit as some form of an appellate court to review errors made by state tribunals that do not affect an inmate's constitutional rights.  *See, e.g., Coleman v. Director, TDCJ-CID,* 2009 WL 56947, *2 (E.D. Tex. Jan. 7, 2009) (noting, in the context of an inmate's habeas corpus proceeding arising out of a prison disciplinary proceeding, that "[i]n the course of reviewing state proceedings, a federal court does not sit as a super state appellate court.").

Moreover, in *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court noted that in some rare situations, an inmate may be entitled to procedural Due Process when state action exceeds the sentence in such an unexpected way as to give rise to protection by the Due Process Clause of its own force.  Normally, however, the Due Process Clause, itself, does not afford an inmate a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974).  It is only those restrictions that impose "atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life" that will invoke the prospect of state-created liberty interests.  *Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005).

Thus, while *Sandin* made it clear that punishments that impact upon the duration of confinement, or which exceed the sentence in an unexpected manner, or that impose "atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life" will give rise to

the protection afforded by the Due Process Clause, more routine disciplinary action will not invoke this constitutional protection. *Sandin,* 515 U.S. at 484. In the instant case, the plaintiff was sentenced to a custody status change. This punishment does not amount to disciplinary action that infringes upon a constitutionally protected liberty interest which would invoke the protection of the Due Process Clause of the Fourteenth Amendment. *See Dickerson v. Cain,* 241 F.App'x. 193 (5th Cir. 2007) (holding that the plaintiff failed to show that placement in Camp J at LSP presents "an atypical or significant hardship beyond the ordinary incidents of prison life"). The plaintiff's claim here likewise fails to make such a showing.

Nevertheless, the plaintiff asserts that the disciplinary reports were issued in retaliation for previously filed grievances that the plaintiff refused to terminate and the plaintiff's hunger strike. In this regard, prison officials may not retaliate against a prisoner for exercising his First Amendment right of access to the courts, or for complaining through proper channels about a guard's misconduct. *Morris v. Powell,* 449 F.3d 682, 684 (5th Cir. 2006); *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). However, claims of retaliation from prison inmates are regarded with skepticism, lest federal courts embroil themselves in every adverse act that occurs in penal institutions. *Woods,* 60 F.3d at 1166. To prevail on a claim of retaliation, a prisoner must establish four elements: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and, (4) causation. *Morris,* 449 F.3d at 684; *Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger,* 188 F.3d 322, 324–25 (5th Cir. 1999).

If an inmate is unable to point to a specific constitutional right that has been violated, then the claim will fail as a matter of law. *Tighe v. Wall,* 100 F.3d 41, 43 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the violation of a constitutional right);

*Woods,* 60 F.3d at 1166 (observing that, "[t]o state a claim, the inmate must allege the violation of a specific constitutional right"). Further, the inmate must allege more than his personal belief that he is the victim of retaliation. *Jones,* 188 F.3d at 325; *Johnson v. Rodriguez,* 110 F.3d 299,310 (5th Cir. 1997). To demonstrate the requisite retaliatory intent on the defendant's part, the inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods,* 60 F.3d at 1166. Regarding the element of causation, a successful claim of retaliation requires a showing that "but for" some retaliatory motive, the complained of adverse action would not have occurred. *Johnson,* 110 F.3d at 310; *Woods,* 60 F.3d at 1166.

In addition, the complained-of adverse action must be more than *de minimis* to support a claim of retaliation in the prison context. *Morris,* 449 F.3d at 684–85; *Hart,* 343 F.3d at 764. The purpose of allowing inmates retaliation claims under 42 U.S.C. § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights. *Morris,* 449 F.3d at 686 (citing *Crawford–El v. Britton,* 523 U.S. 574, 588 n. 10, (1998)). Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. *Morris,* 449 F.3d at 686. *De minimis* acts that would not deter an ordinary person from further exercise of his rights do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.* Thus, an inmate's job transfer from the commissary to the kitchen was *de minimis,* while his transfer to a more dangerous prison was not. *Id.* at 687; *see also Bibbs v. Early,* 541 F.3d 267, 271–72 (5th Cir. 2008) (subjecting inmate to below-freezing temperatures for more than four hours during each of four consecutive nights was more than *de minimis*). Adverse acts that cause an inmate only a

"few days of discomfort," impose "a [single] minor sanction," or impose an otherwise constitutional restriction on the inmate would be *de minimis* acts. *Id.* at 685–86.

In the instant matter, the plaintiff has failed to produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. The plaintiff's unsworn allegations regarding his claim of retaliation are entirely conclusory. As such, the defendants' are entitled to summary judgment on the plaintiff's due process and retaliation claims.

Finally, to the extent the plaintiff is seeking to invoke the supplemental jurisdiction of this court over the plaintiff's potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended that the plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction over the plaintiff's state law claims be declined.

## RECOMMENDATION

It is recommended that the defendants' Motion for Summary Judgment (R. Doc. 48) be granted on the grounds that the defendants are entitled to qualified immunity, that the exercise of supplemental jurisdiction be declined as to the plaintiff's state law claims, and that this action be dismissed. It is further recommended that the plaintiff's Cross Motion for Summary Judgment (R. Doc. 51) be denied.

Signed in Baton Rouge, Louisiana, on August 16, 2016.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE